```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT
```

BONNIE A.,                     )
                               )
    Plaintiff,                 )
                               )
    v.                         )    Case No. 2:17-cv-78
                               )
ANDREW SAUL,                   )
Commissioner of the Social     )
Security Administration        )
                               )
    Defendant.                 )

## OPINION AND ORDER

Plaintiff Bonnie A. brings this action pursuant to 42 U.S.C. § 405(g) for review of the Commissioner's determination that she is not disabled and not entitled to disability insurance benefits (DIB) or Supplemental Security Income (SSI).  Now before the Court are Plaintiff's motion for judgment reversing the decision of the Commissioner, and the Commissioner's motion for judgment affirming that decision.  Plaintiff also argues in a separate motion that remand is required because the Administrative Law Judge (ALJ) who presided over her hearing was not a properly-appointed officer of the United States.  That second motion is opposed by the government.  For the reasons set forth below, Plaintiff's initial motion to remand is **granted**, the Commissioner's motion is **denied**, Plaintiff's subsequent motion to remand is **denied as moot**, and this case is **remanded** for further proceedings.

## Background

### I. Procedural History

Ms. A. filed an application for DIB on December 20, 2011, and an application for SSI on January 6, 2012. Her applications were denied initially and upon reconsideration, at which time she requested an administrative hearing. ALJ Thomas Merrill held a hearing on September 11, 2013. Ms. A. was represented by counsel and testified at the hearing. A vocational expert (VE) also testified. On October 23, 2013, the ALJ issued an opinion concluding that Ms. A. had failed to establish disability within the meaning of the Social Security Act, and was therefore not entitled to either DIB or SSI.

On March 18, 2015, the Appeals Council vacated the ALJ's order, stating:

> The hearing decision found the claimant capable of performing her past relevant work as a companion (Finding 6). The claimant's past relevant work as a companion is not consistent with the claimant's assessed residual functional capacity (RFC). The RFC limited the claimant to a range of medium work and she retained "the capacity for brief and routine interactions with the public, supervisors, and coworkers" (Finding 5). The claimant was assessed with severe anxiety disorder resulting in moderate difficulties in social functioning and moderate difficulties in concentration, persistence or pace (Decision, page 5). However, the job of a companion (309.677-010) requires dealing with people as an integral part of the job functions according [to] the *Dictionary of Occupational Titles (DOT)*. Accordingly, further consideration of whether the claimant is capable of performing her past relevant work and/or other jobs in the national economy is warranted.

The Appeals Council instructed that, upon remand, the ALJ must: (1) further consider the issues in the case and continue to step five of the sequential evaluation process, and (2) if warranted, obtain further testimony from a VE.

The ALJ held a second hearing on August 12, 2015. Ms. A. did not testify, as her attorney considered her testimony at the 2013 hearing sufficient. Counsel also amended Ms. A.'s onset date to August 3, 2012. The ALJ noted that material evidence extends to one year prior to the onset date, and therefore considered only record evidence between August 3, 2011 and Ms. A.'s last insured date of September 30, 2014. A VE testified at the August 2015 hearing.

On September 16, 2015, the ALJ issued a written opinion again concluding that Ms. A. could perform her past relevant work. While his 2013 opinion classified her past relevant work as "companion," the 2015 decision classified that work as "home attendant." The ALJ also changed his assessment of Ms. A.'s social functioning difficulties from "moderate" to "mild." Ms. A. again requested review by the Appeals Council, and the Appeals Council denied her request. She subsequently filed the instant action.

## II. Medical History

In March 2012, Ms. A. underwent a consultative examination with psychologist Dr. Kathryn Rickard. Ms. A. informed Dr.

Rickard that she had worked in elder care from 1979 to the present, and that when transportation was available she was working six and a half hour days. She reported that she was able to concentrate if not interrupted, and could read for an hour but might not fully understand the content due to a language learning disability. She reported some impairment with short and long-term memory, and that she needed to write things down.

Dr. Rickard noted that Ms. A. was alert and appeared to be of average intelligence, with testing (Mini-Mental Status Exam) showing no cognitive impairment. She diagnosed Ms. A. with mixed repetitive-expressive disorder and anxiety disorder. She also believed that Ms. A. retained an unimpaired ability to relate to others, and continued to maintain an interest in pursuing activities in and outside the home.

In March 2012, State agency psychological consultant Dr. Edward Hurley reviewed Ms. A.'s records and concluded that she retained the concentration and persistence for one-to-three step tasks for two hours in an eight hour period, albeit with social restrictions. Dr. Hurley also opined that Ms. A. was capable of brief, routine interactions with supervisors and co-workers. In July 2012, State agency consultant Dr. Joseph Patalano reviewed the record and agreed with Dr. Hurley's assessments.

In March 2013, Ms. A. underwent a neuropsychological evaluation with psychologist Dr. Robert Roth. Ms. A. reported

her lifelong difficulty with verbal learning, as well as with expressive and receptive language. She told Dr. Roth that those issues had intensified in the past year due to psychological stressors. Testing indicated that Ms. A.'s intellectual functioning was in the average range, with reading recognition and sentence comprehension in the low average range. Based on those results, Dr. Roth concluded that Ms. A. showed relatively intact cognitive functioning with a relative weakness in verbal learning.

In April 2013, Ms. A.'s treating primary care physician, Dr. Jessie Reynolds, opined that Ms. A. was markedly limited or effectively precluded from activities related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Dr. Reynolds specifically noted that Ms. A. "struggles with directions [and] new locations, [and] needs constant reassurance."

From July 2013 through May 2015, Ms. A. worked with therapist Peter Butterfield. Butterfield's records show that Ms. A.'s attendance was intermittent, due in part to her fear of bad weather, fear of being in a car with another person driving, and fear of darkness. In July 2015, Butterfield completed a Mental Residual Functional Capacity Questionnaire indicating a diagnosis of post-traumatic stress disorder (PTSD) and seasonal affective disorder with specific phobias. Butterfield also indicated that

5

Ms. A. had no useful ability to function with respect to maintaining regular attendance or completing a normal workday or workweek without interruptions from psychologically-based symptoms.  More specifically, Butterfield reported that Ms. A. would be seriously limited, but not precluded, from: remembering work-like procedures; working in coordination with or proximity to others without being unduly distracted; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; dealing with normal work stress; and being aware of normal hazards and taking appropriate precautions.  In the narrative section of the Questionnaire pertaining to Ms. A.'s ability to perform semi-skilled or skilled work, Butterfield noted that her anxiety causes her to become confused, that she has difficulty retaining information, and that she often has to write things down and then refer to her notes.  Butterfield opined that, on average, Ms. A. would be absent from work more than four days per month.

An assessment by State agency consultant Patricia Pisanelli, M.D., found that Ms. A. is able to work at the medium exertional level, with lifting/carrying up to 25 pounds frequently and 50 pounds occasionally; sitting, standing or walking up to 6 hours in an 8-hour day; and frequent stooping, crouching, and climbing of ladders, ropes, and scaffolds.  Dr. Pisanelli further found

6

that Ms. A. could participate in regular conversation but might have difficulty with a lot of background noise.

### III. Ms. A.'s Function Report

As noted, Ms. A. did not testify at the August 2015 hearing. The ALJ's 2015 decision referenced a Function Report submitted by Ms. A. on November 20, 2012. In that Report, Ms. A. stated that she lived at home with her daughter. Insofar as limitations resulting from her illness or injuries, Ms. A. reported that she was unable to drive during the winter or during rain storms due to anxiety. As a result of this limitation, she would stock up on medications in October so that she would have a six month supply during the winter.

Ms. A. further reported that she was able to prepare meals, clean, and do laundry. She could shop for herself, but again stocked up during the summer months because she could not travel reliably during the winter. She also reported being social with friends and family, though less frequently during the winter. For hobbies, she enjoyed reading, watching television, and renting movies. Ms. A. explained that a learning disability affected her ability to follow instruction and complete tasks, while her PTSD impacted her ability to concentrate, remember things, and think clearly.

### IV. VE Testimony

A VE testified at the August 2015 hearing. The ALJ asked

the VE to assume an individual with the same age, education, and vocational profile as Ms. A. who could lift 50 pounds occasionally and 10 pounds frequently; could stand/walk for six hours and sit for six hours in an eight hour workday; had unlimited use of her hands to operate controls and push and pull; could frequently climb ladders; had an unlimited ability to crouch, bend, kneel, and balance; should avoid concentrated exposure to background noise; and is limited to one to three step tasks over the typical two hour period in a typical workday and workweek. The VE testified that such an individual could perform Ms. A.'s prior work as a home attendant.

The ALJ then asked the VE to assume no useful ability to maintain regular attendance and be punctual or complete a normal work day or work week, an inability to meet competitive standards with regard to carrying out, understanding, or remembering skilled work, and an inability to meet competitive standards with respect to traveling to unfamiliar places. The ALJ further listed several characteristics as seriously limited but not precluded, including: sustaining an ordinary routine without special supervision; making simple work-related decisions; getting along with co-workers; responding appropriately to change in routine; dealing with normal work stress; being aware of normal hazards and taking appropriate precautions; setting realistic goals; making plans independent of others; and using

8

public transportation. Given this second hypothetical, the VE testified that the individual could not perform Ms. A.'s prior work and could not perform any jobs on a competitive basis.

**V.  The ALJ's Decision**

The Social Security regulations provide a five-step sequential process for evaluating disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's RFC, which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence

9

in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

In this case, the ALJ first found that although Ms. A. had been working part-time since her alleged onset date, the work did not rise to the level of substantial gainful activity. At step two, the ALJ concluded that Ms. A. has the following severe impairments: anxiety disorder; degenerative disc disease of the lumbar spine; bilateral sensorineural hearing loss not treated with cochlear implant; and language disorder.

At step three, the ALJ found that Ms. A. does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. With respect to

10

social functioning, the ALJ found only mild difficulties, noting that Ms. A. lives with her daughter, has cared for an elderly woman for years, talks with friends regularly, and eats meals with friends and family.  With regard to concentration, persistence or pace, the ALJ concluded that Ms. A. has moderate difficulties.  While the ALJ acknowledged Ms. A.'s claims of memory issues and difficulty concentrating and completing tasks, the ALJ also noted that Ms. A. has reported reading, watching television, and watching movies.

In support of his findings, the ALJ gave substantial weight to the opinions of State agency reviewers Dr. Hurley and Dr. Patalano with regard to their conclusions about Ms. A.'s daily living, but less weight to their findings of (1) marked limitation in dealing with the general public, and (2) the requirement of brief and routine interactions with coworkers and supervisors.  The ALJ did not give controlling weight to Ms. A.'s treating physician, Dr. Reynolds, in part because her opinions were indicated in a check-off form.  The ALJ also found that Dr. Reynolds' ratings with regard to Ms. A.'s psychological conditions were not supported in the treatment records.  The ALJ similarly gave treating therapist Peter Butterfield's opinions limited weight, finding that they were inconsistent with Ms. A.'s treatment records and her reported daily activities.

Based upon his consideration of the evidence, and

particularly the conclusions of Dr. Pisanelli, the ALJ found that Ms. A. had the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently; to sit, stand, and walk for six hours in an eight hour workday; had unlimited use of her hands to operate controls and push and pull; could frequently climb ladders; had an unlimited ability to crouch, bend, kneel, and balance; should avoid concentrated exposure to background noise; and was limited to one to three step tasks over the typical two hour period in a typical workday and workweek.  The ALJ then considered Ms. A.'s past relevant work as a home attendant and concluded that such work did not exceed Ms. A.'s RFC.  Accordingly, the ALJ found that Ms. A. is not disabled as defined in the Social Security Act.

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that her "impairments are of such severity that [s]he is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial

12

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). In its deliberations, a court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## **Discussion**

Ms. A. first submits that the ALJ failed to abide by the directive from the Appeals Council. She contends that the Appeals Council remanded the case to the ALJ with the instruction that he proceed to step five of the sequential analysis. The ALJ instead determined at step four that Ms. A. could perform her prior work as a home attendant.

The Appeals Council's order was not as clear as Ms. A. portrays. The Appeals Council first remanded for "further consideration of whether the claimant is capable of performing her past relevant work and/or other jobs in the national economy is warranted." Accordingly, the Appeals Council initially

13

invited the ALJ to consider both past relevant work and/or other work in the national economy. In a subsequent statement, the Appeals Council directed the ALJ to proceed to step five and to take VE testimony as necessary. As those directives were not entirely consistent, the Court will not remand the case solely on the basis of the ALJ's failure to adhere to the second portion of the Appeals Council's order.

Ms. A. also argues, however, that the ALJ's most recent findings were not supported by substantial evidence, and in fact contradicted findings made in his initial ruling. In both his original 2013 ruling and his more recent 2015 ruling, the ALJ found that Ms. A.'s anxiety disorder is a severe impairment. However, in 2013 he assessed Ms. A.'s social functioning difficulties as "moderate," while in 2015 he considered them only "mild." The ALJ also declined to acknowledge any limitation with regard to Ms. A.'s ability to interact in the workplace. In 2013, he found that Ms. A. was limited to brief, repetitive interactions with the public.

Given the change in Ms. A.'s onset date, the record in 2015 was a somewhat different record from that considered in 2013. Nonetheless, much of the record was established by the same group of experts. While the ALJ's two opinions differed in material ways, those differences were not supported by substantial evidence.

Most notably, the ALJ largely dismissed the opinions of Ms. A.'s treating providers.  Dr. Reynolds, who had been treating Ms. A. for a host of medical issues over a period of years, was obviously well acquainted with the Plaintiff.  Although Dr. Reynolds' evaluation was set forth primarily on a check-box form, she opined that Ms. A. was "markedly limited" as to over half of the listed, work-related capacities.  Those limited capacities included remembering simple instructions, making simple, work-related decisions, and performing at a consistent pace.  Where the form allowed for a brief description of clinical findings, Dr. Reynolds noted that Ms. A. struggles with directions and new locations, and needs constant reassurance.

The ALJ downgraded Dr. Reynolds' opinions as unsupported by the medical records.  Those records, however, show consistent reports of depression and PTSD.  Moreover, the majority of the records concern medical ailments rather than psychological issues.  The mental ability questions set forth on the check-box form are based upon Dr. Reynolds' long-time relationship with her patient, and are not undermined by records of other, unrelated physical ailments.  Furthermore, Dr. Reynolds' assessment that Ms. A. would have difficulty managing instructions, decisions, and pace was consistent with the ALJ's conclusion in 2013.

The other treating provider cited in the ALJ's decision is Mr. Butterfield.  Again, this provider had a professional

15

relationship with Ms. A. over a period of many months, and formed his opinions based upon that relationship. Nonetheless, like Dr. Reynolds, the ALJ discounted those opinions as unsupported by the record. In particular, the ALJ found that Butterfield's treatment notes from 2014 and 2015 suggested only limited anxiety, while his opinion about Ms. A.'s inability to make simple decisions was undercut by Ms. A.'s ability to live independently and perform household chores. The ALJ also noted that Butterfield is not considered an "acceptable medical source" under the federal regulations (20 C.F.R. 404.1513(d)).

Social Security Rule 06-03 provides that "medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p; Titles II and XVI: *Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 71 Fed. Reg. 45593 (Aug. 9, 2006) (hereafter SSR 06-03). In deciding how much weight to grant such an opinion,

the Commissioner must consider the following factors: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s), and any other factors that tend to support or refute the opinion. SSR 06-03; *see Reynard v. Colvin*, 220 F. Supp. 3d 529, 537-38 (D. Vt. 2016).

Here, the ALJ failed to acknowledge that Ms. A. was in regular therapy with Butterfield between July 2013 and May 2015. During those sessions, Ms. A. consistently shared her anxieties, including her fear of driving in bad weather and fear of driving with others. Ms. A. also spoke with Butterfield about her memory problems, which Butterfield opined in 2015 was typical of abuse victims. Accordingly, Butterfield's conclusions about Ms. A.'s anxieties and cognitive abilities were consistent with his records.

The ALJ also gave only limited weight to the state agency reviewers with respect to their conclusions about social functioning and interactions with the general public, co-workers, and supervisors. In explaining his downgrade of those opinions, the ALJ cited Dr. Rickard's conclusion that Ms. A. had an unimpaired ability to relate to others. Elsewhere in his

17

decision, however, the ALJ gave Dr. Rickard's opinion only limited weight because her exam was conducted prior to Ms. A.'s alleged onset date.

The Court therefore finds that the ALJ's conclusions were not supported by substantial evidence. Indeed, the record suggests that Ms. A.'s capacity for work is similar to the second hypothetical presented to the VE. That hypothetical portrayed an individual with difficulty maintaining regular attendance or completing a normal work week, an inability to carry out, understand, or remember skilled work, and an inability to travel to unfamiliar places. The VE testified that such an individual would be unable to perform any job in the national economy. This case must therefore be remanded for further consideration of the evidence.

## **Conclusion**

For the reasons set forth above, Plaintiff's initial motion to remand (ECF No. 13) is **granted**, the Commissioner's motion to affirm (ECF No. 16) is **denied**, Plaintiff's subsequent motion to remand (ECF No. 24) is **denied as moot**, and this case is **remanded** for further proceedings.

On remand, in light the Plaintiff's concern about the validity of the ALJ's appointment and the fact that this ALJ has already issued two denials, the Commissioner should consider assigning Plaintiff's case to a different ALJ. *See Sutherland v.*

*Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004) (the decision as to whether to reassign on remand is ordinarily reserved to the Commissioner).

DATED at Burlington, in the District of Vermont, this 8th day of August, 2019.

                                                /s/ William K. Sessions III
                                                William K. Sessions III
                                                District Court Judge